UNITED STATES *v.* SHELDON & Co. (No. 1406).[1]

CATGUT, WHIP GUT, OR WORM GUT, WHEN MANUFACTURED.

This merchandise consists of various strands of gut twisted in the form of a rope or cable and then apparently coated with a light varnish-like material. It clearly falls within the description of a manufacture of catgut.—Fischer *v.* United States (5 Ct. Cust. Appls., 301; T. D. 34477).

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 35422 (T. D. 34416).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, on the brief), for the United States.

Submitted on record by appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in this case was assessed for duty as a manufacture of catgut or whip gut at 25 per cent ad valorem under paragraph 462 of the act of August 5, 1909, which provides a duty of 25 per cent on "manufactures of * * * catgut or whip gut or

---

[1] Reported in T. D. 34944 (27 Treas. Dec., 540).

worm gut." The protestant claimed free entry for the merchandise under paragraph 529 of the act which reads:.

Catgut, whip gut, or worm gut, unmanufactured.

The report of the appraiser, in answer to the protest, states that "the merchandise in question is cable made of gut to be used similarly to belting. These cables come in lengths of approximately 100 feet."

The testimony of the importer's witnesses shows that he produced a sample which in no way tends to show that the merchandise is not correctly described in the report of the appraiser, except that he states the length to be about 50 feet instead of 100 feet. The merchandise is described by him as being about 50 feet long and about seven-sixteenths of an inch in diameter. In answer to the question, "Do you know what has been done to this—it is manufactured as it is—it is not just as it came out of the intestines?" stated, "It is in the crudest form I know of."

A further question was put by the general appraiser: "But it is not as it comes out of the animal—you do not claim that?" to which he replied, "No, sir.

"Q. Do you know what is done to it? A. No, sir."

An inspection of the article, however, discloses that it evidently consists of various strands of gut which are twisted in the form of a rope or cable and then apparently coated with a light application of some material in the nature of a varnish or oil. It is apparently well adapted to use for belting purposes, and requires no further manufacture for that purpose. The testimony of the witness falls far short of showing that the article imported is in its crude form. He does state that it is in the crudest form he knows, but this may be the crudest form of the witness's own importations. That it is the crudest form of catgut is clearly disproved by an inspection of the article itself.

We think the article clearly falls within the description of a manufacture of catgut. See Fischer v. United States (5 Ct. Cust. Appls., 301; T. D. 34477).

The cases cited by the general appraiser in sustaining the protest do not go to the length of supporting the conclusion which was reached. The case T. D. 23640 describes the character of the merchandise involved in these cases as being gut of the silk worm, dried and cleaned, put up in bundles and intended to be manufactured into "snells" or "leaders" for fishing lines; also catgut strings intended to be made into surgical sutures, ligaments, etc. No article adapted to use had been manufactured of the material in the cases cited. In this case, as before stated, the article is adapted to use as belting without anything further being done to it. It falls well within the definition of a manufactured article.

The decision of the board is *reversed*.